FILED

2014 JAN 22 AM 10:55

JACKSONVILLE, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL PHAN,

Plaintiff,

v

Case No. 3:14-cv-84-J-25JBT

CONVERGENT OUTSOURCING, INC.,
ENHANCED RECOVERY COMPANY, LLC.,

Defendants.
_________________________________/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Michael Phan ("Plaintiff") alleges the following based on personal knowledge and information belief.

## NATURE OF THE ACTION

1. Plaintiff commences this action for damages and other legal and equitable remedies resulting from the illegal actions of Convergent Outsourcing, Inc., and Enhanced Recovery Company, LLC., in negligently, knowingly and willfully contacting Plaintiff on his cell phone using an "automatic dialing technology system" ("ATDS") in the absence of emergency and without his prior express consent for which he incurs a charge for incoming calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii).

## JURISDICTION AND VENUE

2. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C § 227. *Mims v. Arrow Fin. Svcs., L.L.C.*, 132 S. Ct. 740 (2012).

3. Venue and personal jurisdiction is proper in this District pursuant to 28 U.S.C. §

1391 because the relevant acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida. He is a "person" affected by a violation of the TCPA, as that term is defined by 47 U.S.C. § 153(10).

5. Defendant, Enhanced Recovery Company, LLC., ("ERC"), is a Delaware Limited Liability Company engaged in the business of collecting debts in Florida. Defendant ERC is a "debt collector" as that term is defined by 15 U.S.C. 1692a(3).

6. Defendant, Convergent Outsourcing, Inc. f/k/a ER Solutions, Inc. ("ERS"), is a Washington corporation engaged in the business of collecting debts in Florida. Defendant ERS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(3).

## FACTUAL ALLEGATIONS

***The Alleged Debt***

7. Sometime prior to October 10, 2009, Plaintiff's spouse, Ms. Phan, allegedly incurred a financial obligation, namely, a telecommunication account with T-Mobile ("the Debt" or "alleged Debt").

8. The alleged debt was a financial obligation that was primarily for personal, family, or household purpose and is, therefore, a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

9. Upon information and belief, on or around November 12, 2009, the alleged debt was assigned, placed or otherwise transferred to Defendant ERC for collection.

10. On or around December 3, 2009, Plaintiff alleges that Ms. Phan received a

collection notice from ERC demanding a payment in the amount of $344.68 allegedly owe or due to T-Mobile.

11. In response, on December 5, 2009, Ms. Phan mailed a certified letter to ERC disputing that amount and requesting for verification. Ms. Phan also asked ERC to cease further communication with her regarding the debt. A copy of this letter is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

12. Upon personal knowledge and information belief, the December 5, 2009 letter was delivered and accepted by ERC's agent on or around December 7, 2009. A copy of return receipt requested is attached hereto as **Exhibit "B"** and is incorporated herein by reference.

13. Upon information and belief, Plaintiff alleges that ERC did not response to Ms. Phan December 5, 2009 letter, or otherwise provide verification for the alleged debt.

14. Upon information and belief, sometime prior to February 22, 2010, the alleged debt was assigned, sold, placed or otherwise transferred to Defendant ERS for collection.

15. On or around February 26, 2010, Plaintiff alleges that Ms. Phan received a collection notice from ERS demanding a payment in the amount of $344.68, allegedly owe or due to T-Mobile. A copy of this notice is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

16. In response, on March 5, 2010, Ms. Phan mailed a certified letter to ERS disputing that amount and requesting for verification. She also asked ERS to cease further communication with her regarding the debt. A copy of this letter is attached hereto as **Exhibit "D"** and is incorporated herein by reference.

17. Upon personal knowledge and information belief, the March 5, 2010 letter was delivered and accepted by ERS's agent on or around March 9, 2010. A copy of return receipt

requested is attached hereto as **Exhibit "E"** and is incorporated herein by reference.

18. Upon information and belief, Plaintiff alleges that ERS did not response to Ms. Phan March 5, 2010 letter, or otherwise provide verification for the alleged debt.

***The Telephone Consumer Protection Act***

19. In 1991, Congress enacted the TCPA after finding that autodialer had become a problematic, posing a nuisance and invading the privacy of telephone subscribers. *See, e.g.,* TCPA 47 U.S.C. § 227 note; *see also* 105 Stat 2394 § 2(10). To stop the problem, Congress prohibited callers from, among other things, using an ATDS to call cellular telephones in the absence of an emergency and without the prior express consent of the called party, and provided a private right of action with statutory damages for victims of this practice. *See, e.g.,* 47 U.S.C. § 227(b)(1)(A)(iii), and § 277(b)(3).

20. The prohibition on calls to cellular telephones applies to all ATDS calls, regardless of the identity of the caller or the content of the call. Despite this, illegal calls, both to landlines and to cellular telephones, continue to be a widespread problem, as evidenced by ERC and/or ERS behavior described in this complaint. *See, e.g., In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, ¶ 22, 2012 WL 507959 (F.C.C. 2012) ("Since the TCPA's enactment and the adoption of implementing rules, the Commission has continued to receive thousands of complaints regarding unwanted auto-dialer calls," and "notwithstanding current consent requirements and other TCPA safeguards, consumers continue to experience frustration in receiving unwanted auto-dialer calls.")

21. In recent years, businesses, like ERC and/or ERS, has invested in one or more automatic telephone dialing systems that are capable of making volume of telephone calls

without any human intervention. In doing so, both ERC and ERS turned to a predictive dialer or ATDS, which works autonomously until a human voice comes on the line. If that happens, an agent would joint the call. If that does not happens, a predictive dialer has the potential to deliver a prerecorded message made with an artificial voice to the caller's voicemail.

22. According to the FCC's 2008 Declaratory Ruling, predictive dialers use statistical algorithms to minimize the time that an agent spends waiting between conversations while minimizing the occurrence of someone answering when no agent is available. This provides saving and efficiency to ERC or ERS and their agents, but annoyance to the user of the cellular telephone to which such calls are placed. An automated call to a landline phone can be an annoyance; an automated to a cell phone adds expense to annoyance. *See, e.g., In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request for ACA International for Clarification and Declaratory Ruling,* CG Docket No. 02-278, 23 FCC Rcd 559, 565-566 (Dec. 28, 2007).

23. According to the Federal Communication Commission ("FCC") finding, unlike calls placed to landlines, calls made to wireless numbers can actually cost its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each call they receive or incur a usage allocation deduction to their calling plan, regardless of whether or not the call is authorized. *Id.*

24. Likewise the FCC stated that predictive dialer met the definition of an ATDS given in the TCPA and therefore subject to the TCPA's restrictions. The key part of the FCC's reasoning in determining that a predictive dialer was, in fact, an ATDS were based on the statutory definition of 'automatic telephone dialing system,' in the TCPA's legislative history, and current industry practices and technology, a predictive dialer falls within the meaning and

definition of autodialer and the intent of Congress." *See, 2003 TCPA Order,* 18 FCC Rcd. at 14091, ¶ 131.

25. Plaintiff is a bystander, he does not give consent to receive telephone calls from neither ERC nor ERS. ERC and/or ERS put a machine on the job called a predictive dialer and repeatedly calling his cell phone number. All the calls that Plaintiff received from ERC and ERS were made in a futile effort to collect on a debt that he does not owe.

***ERC's Automated Telephone Calls***

26. From January 25, 2010 through February 6, 2010, without Plaintiff's prior express consent, ERC made 12 non-emergency telephone calls to his cellular telephone using a predictive dialer or an ATDS. A copy of the call logs is attached hereto as **Exhibit "F"** and is incorporated herein by reference.

27. Some of the calls that Plaintiff did not answer, ERC using a machine to deliver a prerecorded message made with an artificial voice to his voicemail with instruction for him to return the call at a telephone 800-617-0049, which telephone number assigned or owed by ERC or otherwise spoof by ERC.

28. On the morning of January 25, 2010, at 10:57 am, Defendant ERC made a telephone call to Plaintiff cellular telephone using a predictive dialer or an ATDS. The phone number displayed on his caller ID was 800-617-0049. He did not answered and ERC left the following voicemail on his cellular telephone using a prerecorded message made with an artificial voice:

> This message is for Tuyen Phan. If you are not Tuyen Phan please hang up or disconnect. If you are Tuyen Phan, please continue to listen to this message. By continuing listen to this message you acknowledge that you are Tuyen Phan. You should not listen to this message, so that other people can hear it as it contains personal and private information. This is Enhance Recovery Company at

> 800-617-0049. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact me about an important business matter at 800-617-0049. Good bye."

29. On the following morning on January 26, 2010 at 9:32 am, Defendant ERC made another telephone call to Plaintiff cellular telephone using a predictive dialer or an ATDS. The phone number displayed on her caller ID was 800-617-0049. Plaintiff answered the call and a prerecorded message made with an artificial voice stated, "This message is for Tuyen Phan. If you are not Tuyen Phan, please hang up or disconnect. If you are Tuyen Phan press one." Plaintiff press one and a male voice came onto the line. The debt collector stated that he wanted to speak with Tuyen Phan regarding a debt owed to T-Mobile. Plaintiff advised the debt collector that Tuyen Phan is the Plaintiff's spouse. Plaintiff informed the debt collector that he did not want to receive any phone calls from ERC. The debt collector promised Plaintiff that he would removed his cell phone number from ERS's calling lists.

30. Despite ERC's debt collector promised, from January 27, 2010 through February 6, 2010, without Plaintiff's prior express consent, ERC made another 10 non-emergency telephone calls to his cellular telephone using a predictive dialer or ATDS. Some of the calls that he did not answered, ERC left a voicemail on his cell phone using a prerecorded messages made with an artificial voice for which he incurred a charge for the incoming calls.

31. Some of the call that Plaintiff answered, an artificial voice instructed him to press 1 if Tuyen Phan and press 2 if not. If he presses 1, an artificial voice asked to hold on the line and after a significant pause, a debt collector employed by ERC would come on the line. If he presses 2, an artificial voice asked him to return the call to ERC. Plaintiff has incurred a charge for the incoming calls that he answered.

***ERS's Automated Telephone Calls***

32. From March 9, 2010 through April 24, 2010, without Plaintiff's prior express consent, ERC made 27 non-emergency telephone calls to his cellular telephone using a predictive dialer or an ATDS. A copy of the call logs is attached hereto as **Exhibit "G"** and is incorporated herein by reference.

33. Some of the calls that Plaintiff did not answer, ERS using a machine to deliver a prerecorded message made with an artificial voice to his voicemail with instruction for him to return the call at a telephone 800-903-2218, which telephone number assigned or owed by ERS or otherwise spoof by ERS.

34. On March 9, 2010, without Plaintiff's prior express consent, ERS made two non-emergency telephone calls to his cellular telephone using one or more automated telephone systems that were capable of delivering a prerecorded message made with synthesized voice. The telephone number displayed on Plaintiff caller ID was 800-903-2218. The first call placed at 10:12 am and the second telephone calls occurred at 4:49 pm. Plaintiff answered and a voice would state, "We have an urgent message for Tuyen Phan." This synthesized voice continued to ask Plaintiff questions that attempted to locate Tuyen Phan. Plaintiff answered all the questions, indicating that his cell phone number did not belong to Tuyen Phan. After answering all the questions asked by the synthesis voice, the voice asked Plaintiff to hold on the line. After a significant pause, a debt collector employed by ERS would come on the line and ask to speak with Tuyen Phan. Plaintiff would explained that Tuyen Phan is his wife and asked the debt collector to remove his cell phone from ERS calling lists. The debt collector promised Plaintiff that he would remove his cell phone number from ERS's automated dialer.

35. Despite the promises of ERS's debt collector, Plaintiff continued to receive

similar telephone calls from ERS. On approximately 4 separated occasions, without his prior express consent, ERS made non-emergency telephone calls to his cellular telephone using one or more automatic telephone dialing systems. The first telephone call took place at 9:23 am on March 10, 2010 and the second calls occurred at 5:43 pm on the same day. Plaintiff did not answer the call and similar prerecorded messages made with an artificial voice were left on his voicemail with instruction for him to return the call. On the calls occurred at 9:29 am and 5:03 pm on March 11, 2010, on each occasion that Plaintiff answered, an artificial voice instructed him to press 1 if Tuyen Phan and press 2 if not. He press 1 and a debt collector employed by ERS comes on line and asked to speak with his wife. He explained the debt collectors that his wife, Tuyen Phan, allegedly owed the debt and not him, and his cell phone number did not belong to Tuyen Phan. On each occasions, these debt collectors promised to remove his cell phone number from ERS's calling lists.

36. On the morning of March 12, 2010 at 10:22 am, without Plaintiff's prior express consent, ERS made a telephone call to his cellular telephone using one or more automatic telephone dialing systems. The telephone number displayed on Plaintiff caller ID was 800-903-2218. Plaintiff answered and he heard the same prerecorded message made with the synthesized voice. The voice declared that ERS had an important message for Tuyen Phan.

37. On the evening of March 12, 2010, at 6:09 pm, without Plaintiff's prior express consent, ERS made a non-emergency telephone call to his cellular telephone using one or more automatic telephone dialing systems. The telephone number displayed on Plaintiff caller ID was 800-903-2218. Plaintiff answered the phone and heard the same prerecorded message made with the synthesized voice and left a voicemail on his cell phone. The voice declared that ERS had an important message for Tuyen Phan.

38. Following the March 12, 2010 telephone calls, without Plaintiff's prior express consent, ERS made another 19 non-emergency telephone calls to his cellular telephone using one or more automatic telephone dialing systems, which has the capacity to deliver a prerecorded messages made with the synthesized voice and left a voicemail on his cell phone. Some of the call that he did not answer, the voice stated that ERS had an important message for Tuyen Phan and asked him to return the call.

39. These telephone calls occurred daily, repeated twice a day, recurrent for more than four weeks. Each automated call usually took place after 9 o'clock ante-meridiem and before 9 o'clock post-meridiem.

40. Per FCC's 2008 Declaratory Ruling, the Commission stated that, "the burden of proof is on the creditor or a third party debt collector to demonstrate that Plaintiff has provided prior express consent to be called." *Id.* Therefore, the burden is on ERS to show proof that Plaintiff has consented to be contacted by ERC and/or ERS in the manner alleged herein.

41. On information and belief, Plaintiff alleges neither ERC nor ERS meet this burden of proof because he did not give consent to receive telephone calls from ERC or ERS in the manner described in the complaint.

42. Plaintiff provided neither ERC nor ERS his wireless number at any the time during the transaction or thereafter.

43. Plaintiff did not list a wireless number in or on any document with T-Mobile at any time during the transaction or thereafter.

44. Plaintiff did not verbally provide ERC or ERS his wireless number at any time during the transaction or thereafter.

45. Direct evidence of ERC or ERS using a predictive dialer is within the sole

possession of ERC or ERS at this stage, and will therefore only come to light once discovery has been undertaken. However, a reasonable inference can be drawn that the calls described herein were delivered by a predictive dialer based on the genetic content of the calls and the existence of similar calls received by Plaintiff.

46. The Association of Credit and Collection Professionals ("ACA International") have stated that, "[I]t is clear [the FDCPA and TCPA] apply to consumers and non-consumers. Therefore, collectors should take steps to scan their collection lists and ensure debt collectors are contacting the correct consumer." *Id.*

47. ACA International has also concluded that, "[E]rroneously dialed numbers likely are not exempted from the [TCPA and FCC regulations] pertaining to autodialer and prerecorded messages. Thus, a debt collector may face liability under the TCPA and corresponding FCC regulations for autodialed and prerecorded message calls placed to the wrong individual." *Id.*

48. On information and belief, Plaintiff alleges that neither ERC nor ERS have adopted and implemented reasonable practices and procedures to effectively prevent automated call placed to a non-consumer cell phone number. In contrary, ERC and/or ERS have adopted a corporate policy in using one or more automatic telephone dialing systems that were capable of delivering a prerecorded message made with an artificial to the wrong individuals just as they did to the Plaintiff's cellular telephone in this case.

49. ERC and/or ERS acts or practices described above were knowing and done with an entire want of care that reflects a conscious indifference to the consequences.

50. As a direct consequence of ERC and/or ERS willingly or knowingly violated the TCPA, Plaintiff has suffered harm, continues to suffer from anger, anxiety and frustration.

## CAUSES OF ACTION

### COUNT I
### Negligent Violations of the TCPA, 47 U.S.C. § 227

51. Plaintiff incorporates the allegations contained in ¶ 1 through ¶ 50 and further states as follows:

52. Notwithstanding the fact that Plaintiff did not give express consent to be contacted, from January 24, 2010 February 6, 2010, ERC made 12 non-emergency telephone calls to Plaintiff's cellular telephone and left several prerecorded message made with an artificial voice using one or more automated telephone dialing systems for which he incurred a charge for the incoming calls, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

53. Likewise, without Plaintiff's prior express consent, from March 9, 2010 through March 26, 2010, ERS made 27 non-emergency telephone calls to his cellular telephone and left several prerecorded message made with an artificial voice using one or more automatic telephone dialing systems for which he incurs charge for the incoming call, in violation of 47 U.S.C. § 27(b)(1)(A)(iii).

54. The foregoing acts and omissions of ERC and/or ERS constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every of the above-cited provisions of 47 U.S.C. § 277, *et seq*.

55. As a result of ERC's and/or ERS's negligent violations of 47 U.S.C. § 277 *et seq*., Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

### COUNT II
### Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227

56. Plaintiff incorporates the allegations contained in ¶ 1 through ¶ 55 and further

states as follows:

57. On numerous instances, Plaintiff verbally informed ERC and ERS and their debt collectors to stop calling his cell phone. Ignoring Plaintiff requested, ERC and/or ERS knowingly made repeat non-emergency telephone calls to Plaintiff's cellular telephone and left several prerecorded messages made with an artificial voice using one or more automatic telephone dialing systems for which he incurred a charge for the incoming calls, in violation of 47 U.S.C. §227(b)(1)(A)(iii).

58. The foregoing acts and omissions of ERC and/or ERS constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*.

59. As a result of ERC and/or ERS knowing and/or willful violations of 47 U.S.C. § 227, *et seq*., Plaintiff is entitled to treble damages up to $1,500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against ERC and ERS as follows:

a. Award Plaintiff statutory damages in the amount of $500 for each and every violation pursuant to 47 U.S.C. 227(b)(3)(B).

b. If it is found that ERC and ERS willfully and/or knowingly initiated a telephone call using an automated dialing system or prerecorded artificial voice to Plaintiff's cellular telephone in violation of the TCPA, an increase by the Court an award of statutory damages pursuant to 47 U.S.C. § 227(b), prayed for to three times that amount for each and every violation as described in the previous paragraph, as

authorized by 47 U.S.C. § 227(b)(3), for willful and/or knowing violations; and

c. Granting other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests trial by jury on all claims that can be so tried.

Respectfully submitted on this 21 day of January 2014.

By: ______________________________

Dr. Michael Phan. D.Ed.
6030 Bartram Village Drive
Jacksonville, FL 32258
Telephone: (904) 551-0699
*michaelnphan@gmail.com*